IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **LIBERTY INSURANCE UNDERWRITERS INC.,** | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 7:24-cv-00004 |
| **PARKCREST BUILDERS, LLC; RALPH RUBY LANDSCAPING; and VIDA BUENA APARTMENTS, LLC,** | § § § § | |
| Defendants. | § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Liberty Insurance Underwriters Inc. ("LIU") files this Complaint for Declaratory Judgment and in support thereof would respectfully show the Court as follows:

### I.   PARTIES

1. Plaintiff LIU is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in the Commonwealth of Massachusetts. LIU is a citizen of both the State of Illinois and the Commonwealth of Massachusetts.

2. Defendant Parkcrest Builders, LLC ("Parkcrest") is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in the State of Texas. Parkcrest is a citizen of the State of Texas. The members of Parkcrest are Jay Stewart, Michael Stewart, and Antoinette Austin, who are all residents and citizens of the State of Texas. Parkcrest may be served with process by serving its registered agent for service of process, Harold N. May, 1500 South Dairy Ashford, Suite 325, Houston, TX, 77077 or wherever he may be served.

3. Defendant Ralph Ruby Landscaping ("Ruby Landscaping") is a Texas company existing under the laws of the State of Texas with its principal place of business in the State of

Texas. Ruby Landscaping is a citizen of the State of Texas. Ruby Landscaping maintains no registered agent with the Texas Secretary of State and may be served by serving its sole principal Ralph E. Ruby with process at 126 E Sunflower Ave., McAllen, TX 78504 or wherever he may be served.

4. Defendant Vida Buena Apartments, LLC ("Vida Buena") is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in the State of Texas. Vida Buena is a citizen of the State of Texas. Vida Buena has three members:

(1) FFKKG Management, Inc., a Texas corporation existing under the laws of the State of Texas with its principal place of business in the State of Texas, and a citizen of the State of Texas;

(2) FFKKG Family Limited Partnership, a Texas partnership existing under the laws of the State of Texas with its principal place of business in Texas, and a citizen of the State of Texas with two partners:

(a) FFKKG Management, Inc., a citizen of the State of Texas as set forth in subpart (1) above, and

(b) Filiberto Rodriguez, a resident and citizen of the State of Texas;

and

(3) Filiberto Rodriguez, a resident and citizen of the State of Texas.

Vida Buena may be served with process by serving its registered agent for service, Filiberto Rodriguez, 500 E. Ridge Rd., Suite 201, McAllen, Texas 78503, or wherever he may be served.

## II. JURISDICTION AND VENUE

5. This action involves a dispute between citizens of different states. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

6. Venue is proper in this judicial district under 28 U.S.C. §1391(a) because one or more defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III. FACTS

**A.   Background**

    **1.   The LIU Policies**

7. Parkcrest is a general contractor in the construction industry. LIU issued to Parkcrest three (3) consecutive commercial excess liability policies as follows: (1) Policy No. 1000214500-01 for the Policy Period July 6, 2016 – July 06, 2017; (2) Policy No. 1000214500-02 for the Policy Period July 6, 2017 – July 6, 2018; and (3) Policy No. 1000214500-03 for the Policy Period July 6, 2018 – July 6, 2019 (the "LIU Policies"). In accordance with their terms, the LIU Policies apply excess to primary commercial general liability policies issued to Parkcrest by Allied World Assurance Company with limits of $1,000,000 Each Occurrence and $2,000,000 in the General Aggregate for each of the foregoing policy years (the "AWAC Policies").

8. Section I ("COVERAGE") of the Insuring Agreements in the coverage form of the LIU Policies provides in part as follows:

> We will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period." We will pay "loss" in excess of the Underlying Insurance shown in Item 5. of the Declarations, but only up to an amount not exceeding our Limits of Liability as shown in Item 4. of the Declarations. Except for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the First Underlying Insurance Policy, as shown in Item 5. of the Declarations.

The inclusion or addition hereunder of more than one Insured shall not operate to increase our Limits of Liability beyond that shown in Item 4. of the Declarations.

9. Section III ("DEFENSE") of the Insuring Agreements in the coverage form of the LIU Policies provides in part as follows:

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy. If we exercise such right, we will do so at our own expense.

C. If the limits of liability of the Underlying Insurance shown in Item 5. of the Declarations are exhausted solely by payment of "loss", we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which, in our opinion, may give rise to a "loss" under this policy. Such investigation or defense shall be at our own expense. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Liability shown in Item 4. of the Declarations are exhausted by payment of "loss."

10. Section V ("CONDITIONS") in the coverage form of the LIU Policies contains conditions providing in part as follows:

**E. Notice of Occurrence**

1. You must see to it that we are notified as soon as practicable of an occurrence which may result in a "loss" covered under this policy. To the extent possible, notice will include:

    a) how, when and where the occurrence took place;

    b) the names and addresses of any injured persons and witnesses;

    c) the nature and location of any injury or damage arising out of the occurrence.

2. If a claim or suit against any Insured is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

3. You and any other involved Insured must:

    a) immediately send us copies of any demands, notices, summonses or legal documentation received in connection with a claim or suit;

    b) authorize us to obtain records and other information;

    c) cooperate with us in the investigation, settlement or defense of the claim or suit; and

    d) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

4. The Insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F. Other Insurance**

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance. Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities. . . .

**H. When "Loss" is Payable**

Coverage under this policy will not apply unless and until you or the insurer(s) of the Underlying Insurance shown in Item 5. of the Declarations has paid or is obligated to pay the full amount of such Limits of Liability.

When the amount of "loss" has finally been determined, we will promptly pay on your behalf the amount of "loss" covered under this policy.

11. The Contractors Limitation Endorsement in the LIU Policies provides in part as follows:

**EXCESS CONTRACTORS LIMITATION ENDORSEMENT**

This insurance does not apply to:

1. Any "loss" assumed by any Insured under any contract or agreement, or

2. Any "loss" for property damage:

    a. to your product arising out of it or any part of it;

    b. to your work arising out of it or any part of it included in the products-completed operations hazard; (but this subparagraph b. does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor);

    c. to property leased or rented to, occupied or used by or in the care, custody or control of any Insured or as to which any Insured is for any purpose exercising physical control;

    d. arising out of . . . [:]

        (2) the collapse of or structural injury to any building or structure due to (a) grading of land, excavation, burrowing, filling or back-filling, tunneling, pile driving, coffer-dam work or caisson work or (b) moving, shoring, underpinning, razing or demolition of any building or structure, or removal or rebuilding of any structural support thereof . . . .

Except to the extent that such insurance is provided by the First Underlying Insurance Policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

  3. Any "loss" arising out of:

    a. any project insured under a wrap-up or any similar rating plan; or

    b. the rendering of or failure to render any professional services, including but not limited to:

        (1) the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

        (2) supervisory, inspection, architectural or engineering activities.

12.   The AWAC Policies include the following Insuring Agreement:

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury"

    or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period.

13.    The AWAC Policies also include the following exclusions:

2. **Exclusions**

This insurance does not apply to:

    a.  **Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b.  **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1) That the insured would have in the absence of the contract or agreement; or

        (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

    j.  **Damage To Property**

    "Property Damage" to . . . [:]

        (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

    if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

14.    The AWAC Policies also include the following "other insurance" condition:

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

   This insurance is primary except when Paragraph **b**. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c**. below.

   b. **Excess Insurance**

   (1) This insurance is excess over . . . [:]

       (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

   (2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

15.    The AWAC Policies also include the following definitions:

   8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      b. You have failed to fulfill the terms of a contract or agreement;

      if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means . . . [:]

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. . . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . . .

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. . . .

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

21. "Your product":

  a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (a) You;

    (b) Others trading under your name; or

    (c) A person or organization whose business or assets you have acquired; and

   (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

  a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

  b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2) The providing of or failure to provide warnings or instructions.

**2.   The Ruby Landscaping Lawsuit, the Construction Defect Crossclaims, and the Construction Defect Settlement Agreement**

16.   Parkcrest was the general contractor for the construction of the Mirabella Apartments in McAllen, Texas (the "Project"). Ruby Landscaping, which provided landscaping services to Project owner Vida Buena, subsequently filed a lawsuit against Parkcrest and Vida Buena (as well as nonparty Edinburg Venture, Ltd.) for unpaid sums for such services at the Mirabella Apartments (and at The Residence of Edinburg Apartments, owned by Edinburg Venture, Ltd.), one styled and *numbered Ralph Ruby Landscaping v. Parkcrest Builders, LLC, et al.*, in the 139th Judicial District Court, Hidalgo County, Texas (the "Ruby Landscaping Lawsuit"). Vida Buena filed therein an Original Answer, Crossclaim, Third-Party Petition asserting crossclaims against Parkcrest and others for damages arising out of alleged defective construction of the Project (the "Construction Defect Crossclaims").

17.   On or about May 18, 2023, an agreement to settle the Construction Defect Crossclaims asserted by Vida Buena against Parkcrest was finalized (the "Construction Defect Settlement Agreement"). The Construction Defect Settlement Agreement was funded by several liability insurers, including Parkcrest's liability insurers, LIU and AWAC. In exchange for the sums paid by its insurers, Parkcrest was provided a full and complete release from the claims asserted by Vida Buena in the Lawsuit.

18.   Ruby Landscaping's claims in the Ruby Landscaping Lawsuit were not part of the Construction Defect Settlement Agreement, as Ruby Landscaping's claims against Parkcrest and Vida Buena for unpaid landscaping services at the Project are unrelated to the Construction Defect Crossclaims asserted by Vida Buena against Parkcrest. Ruby Landscaping's claims, which are not for any property damage, are limited to economic losses in the form of an apparently unpaid

balance due for Ruby Landscaping's landscaping services, and the Construction Defect Settlement Agreement did not include any sums allocated to Ruby Landscaping's claims.

19. After the Construction Defect Settlement Agreement was finalized, Ruby Landscaping filed its First Amended Petition in the Ruby Landscaping Lawsuit alleging that, in addition to Parkcrest, its putative liability insurers are obligated to satisfy its claims for unpaid sums for landscaping services at the Project as well as for attorney's fees under Texas Civil Practice & Remedies Code § 38.001.  Vida Buena also filed a First Supplemental Cross-Petition in the in the Ruby Landscaping Lawsuit alleging that Parkcrest and its putative liability insurers are obligated to satisfy Ruby Landscaping's claims in the Ruby Landscaping Lawsuit for unpaid sums for landscaping services at the Project as well for attorney's fees.  LIU has denied coverage for these claims.

### 3. This Dispute

20. For the following reasons, LIU has no obligation to defend and/or indemnify Parkcrest against the claim by Ruby Landscaping against it in the Ruby Landscaping Lawsuit: (a) the inapplicability of the LIU Policies' Insuring Agreements; (b) the operation of the applicable exclusion for Expected or Intended Injury;  (c) the operation of the applicable exclusion for Contractual Liability; (d) the operation of applicable exclusion for Damage to Property; (e) the operation of the LIU Policies' Notice of Occurrence Condition and/or (f) the operation of the LIU Policies' Other Insurance Condition.

21. For the following reasons, LIU has no obligation to indemnify Ruby Landscaping for the damages claimed by Ruby Landscaping in the Ruby Landscaping Lawsuit:  (a) the same provisions of the LIU Policies set forth in the foregoing paragraph 20 preclude and/or eliminate any coverage thereunder for Ruby Landscaping's claims; (b) LIU is not a party to the Construction Defect Settlement Agreement and has not otherwise assumed any obligations thereunder to Ruby

Landscaping; (c) Ruby Landscaping was not a party to or a third-party beneficiary of the Construction Defect Settlement Agreement; (d) Ruby Landscaping has no right of direct action against Parkcrest's insurers, including LIU, under Texas law; and (e) LIU and Ruby Landscaping has no contractual relationship that would obligate LIU to reimburse Ruby Landscaping for its landscaping services at the Project.

22.     For the following reasons, LIU has no obligation to indemnify Vida Buena for the damages claimed by Vida Buena in the Ruby Landscaping Lawsuit: (a) the same provisions of the LIU Policies set forth in the foregoing paragraph 20 preclude and/or eliminate any coverage thereunder for Vida Buena's claim; (b) LIU is not a party to the Construction Defect Settlement Agreement and has not otherwise assumed any obligations thereunder to Vida Buena; (c) Vida Buena was not a third-party beneficiary of any obligation made by Parkcrest or its liability insurers, including LIU, in the Construction Defect Settlement Agreement; (d) Vida Buena has no right of direct action against Parkcrest's insurers, including LIU, under Texas law; and (e) LIU and Vida Buena have no contractual relationship that would obligate LIU to reimburse Vida Buena for sums owed to Ruby Landscaping for its landscaping services at the Project.

### IV.     CAUSES OF ACTION

### COUNT I - DECLARATORY JUDGMENT – PARKCREST BUILDERS

23.     LIU incorporates the allegations set forth in paragraphs 1-22 above.

24.     A real, substantial and justiciable controversy exists between the parties concerning their respective rights and obligations with respect to LIU's alleged duty to defend and/or indemnify Parkcrest against the claim by Ruby Landscaping against it in the Ruby Landscaping Lawsuit.

25.     Plaintiff asks the Court to declare as a matter of law that LIU has no duty, under the terms of the LIU Policies or otherwise, to defend Parkcrest against the claim asserted by Ruby

Landscaping against it or to indemnify it for the damages Ruby Landscaping seeks from it in the Ruby Landscaping Lawsuit.

### COUNT II - DECLARATORY JUDGMENT – RUBY LANDSCAPING

26. LIU incorporates the allegations set forth in paragraphs 1-25 above.

27. A real, substantial and justiciable controversy exists between the parties concerning their respective rights and obligations with respect to LIU's alleged duty to indemnify Ruby Landscaping for the damages it seeks in the LIU Lawsuit.

28. Plaintiff asks the Court to declare as a matter of law that LIU has no duty, under the terms of the LIU Policies, the Construction Defect Settlement Agreement or otherwise, to indemnify Ruby Landscaping for the damages it seeks in the Ruby Landscaping Lawsuit.

### COUNT III - DECLARATORY JUDGMENT – VIDA BUENA

29. LIU incorporates the allegations set forth in paragraphs 1-28 above.

30. A real, substantial and justiciable controversy exists between the parties concerning their respective rights and obligations with respect to LIU's alleged duty to indemnify Vida Buena against the claim by Ruby Landscaping against it in the Ruby Landscaping Lawsuit.

31. Plaintiff asks the Court to declare as a matter of law that LIU has no duty, under the terms of the LIU Policies, the Construction Defect Settlement Agreement or otherwise, to indemnify Vida Buena for the damages Ruby Landscaping seeks from it in the Ruby Landscaping Lawsuit.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Liberty Insurance Underwriters Inc. respectfully requests that upon hearing and proper proof the Court enter judgment rendering the declarations requested herein, and for such other and further relief, both special and general, at law or in equity, that it may show itself justly entitled.

        Respectfully submitted,

    **MARTIN, DISIERE, JEFFERSON & WISDOM, LLP**

By:    /s/*Matthew Paradowski*
        **Matthew Paradowski**
        State Bar No. 24027588
        paradowski@mdjwlaw.com
        LEAD COUNSEL
        Summer L. Frederick
        State Bar No. 24067764
        frederick@mdjwlaw.com
        911 Cypress Waters Blvd., Suite 250
        Dallas, Texas 75019
        Telephone: (214) 420-5500
        Facsimile: (214) 420-5501

        **ATTORNEYS FOR PLAINTIFF**
        **LIBERTY INSURANCE**
        **UNDERWRITERS INC.**