United States District Court
Southern District of Texas
**ENTERED**
August 08, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LIBERTY INSURANCE UNDERWRITERS, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:24-CV-004 |
| PARKCREST BUILDERS, LLC, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is a declaratory action filed by Liberty Insurance Underwriters Inc. seeking a ruling as to its rights and obligations with respect to its alleged duty to defend and/or indemnify defendants Parkcrest Builders, LLC, Ralph Ruby Landscaping, and Vida Buena Apartments, LLC, in connection with another lawsuit arising from payment and construction disputes. Pending before the Court are two motions: Ralph Ruby Landscaping's motion to abstain (Dkt. No. 9) and Vida Buena Apartments, LLC's motion to dismiss on subject-matter jurisdiction and abstention grounds (Dkt. No. 12). After careful consideration of the Motions and the responsive briefings, the Motions are **GRANTED** in part and **DENIED** in part.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Vida Buena Apartments, LLC ("Vida Buena") owns the Mirabella Apartments ("the Project") in McAllen, Texas. Dkt. No. 14-1 at ¶ 8. To build the Project, Vida Buena employed Parkcrest Builders, LLC ("Parkcrest") as the general contractor, and Parkcrest in turn hired Ralph Ruby Landscaping ("Ruby") to perform landscaping services for the Project. *Id*. Before turning to the present lawsuit and the claims herein, the Court must first outline its interplay with a previously-filed lawsuit in Texas state court.

### A.     THE STATE-COURT LAWSUIT

In February 2019, Ruby filed suit in the 139th Judicial District of Hidalgo County, Texas against, *inter alia*, Parkcrest and Vida Buena, alleging that they refused to pay Ruby for the landscaping services that Ruby provided. Dkt. No. 13-5. Muddying the waters, Vida proceeded to assert crossclaims against Parkcrest and others for alleged defective construction of the Project. Dkt. No. 13-7. After years of litigation, in May 2023, Vida Buena and Parkcrest entered into a settlement agreement with respect to the construction defect counterclaims (the "Settlement Agreement"). Dkt. No. 13-9. The Settlement Agreement, resolving the construction defect counterclaims between Vida Buena and Parkcrest, did not resolve Ruby's original claims against them for unpaid landscaping services. Thereafter, on the basis that the Settlement Agreement allegedly committed Parkcrest's liability insurers—including Liberty Insurance Underwriters Co. ("LIU")—to be "responsible for any outstanding materialman liens, unpaid vendors or subcontractors," Ruby filed an amended petition in September 2023 which asserted claims for quantum meruit against Vida Buena and Edinburg Venture, Ltd. for the value of the services Ruby provided, and claims for breach of contract against Parkcrest and Liberty Mutual Insurance Co. ("LMI").[1] Dkt. No. 9-1 at ¶¶ 12–13. Just as it did with the original petition, Vida Buena filed another cross-petition in November 2023, this time against Parkcrest and LMI, asserting a breach-of-contract claim on grounds that the terms of the Settlement Agreement with Parkcrest obligated Parkcrest and its insurers—including LMI—to be responsible for amounts owed to unpaid vendors including Ruby.[2] Dkt. No. 9-2.

---

[1] Later, Ruby again amended the petition to additionally name LIU as a defendant, because LMI was not the correct entity in the controversy. Dkt. No. 14-1.

[2] Just as Ruby did, Vida Buena initially named the wrong Liberty entity in the immediate aftermath of the Settlement Agreement but later amended to name LIU, the correct entity.

### B. THE PRESENT LAWSUIT

On January 4, 2024, while the claims in Ruby's amended petition were being litigated, LIU filed the present lawsuit seeking declaratory relief as to its rights and obligations with respect to the damages asserted by Rudy and Vida Buena in the state-court litigation. *See* Dkt. No. 1. LIU asserts three counts, arguing that: (1) it has no duty to defend and/or indemnify Parkcrest, (2) it has no duty to indemnify Ruby, and (3) it has no duty to indemnify Vida Buena. *See id.* at ¶¶ 23–31. Ruby has moved for the Court dismiss or stay this action pursuant to the *Brillhart* abstention doctrine. Dkt. No. 9. Similarly, Vida Buena has filed a motion to dismiss based on (1) lack of subject-matter jurisdiction, and (2) the *Brillhart* abstention doctrine.[3] Dkt. No. 12. The Court now considers both motions.

## II. APPLICABLE LAW

### A. RULE 12(B)(1)

Federal courts are courts of limited jurisdiction; a court may not hear cases over which it "lacks the statutory or constitutional power to adjudicate[.]" *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015) (quotation omitted). In such cases, the court should grant a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Haliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation marks omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the

---

[3] With respect to its *Brillhart* abstention argument, Vida Buena did not make any arguments of its own but rather adopted and incorporated Ruby's briefing by reference. *See* Dkt. No. 12 at 2.

party asserting jurisdiction." *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quotation omitted).

### B. DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . ." 28 U.S.C. § 2201(a). As the Fifth Circuit has explained, "the purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or breach of some contractual duty." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 926 (5th Cir. 2023) (cleaned up). Federal district courts enjoy "unique and substantial discretion whether to declare the rights of litigants," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), and this discretion is fitting "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp," *id.* at 289. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

### III. ANALYSIS

While Ruby has moved for the Court to exercise its discretion against jurisdiction, and Vida Buena has done the same, Vida Buena also challenges the premise that this Court has jurisdiction at all on grounds that the amount in controversy has not been met. Dkt. No. 12 at 1. The Court will first evaluate whether it could exercise jurisdiction over this action at all, and then if so, whether the Court should exercise that jurisdiction.

    A.      SUBJECT-MATTER JURISDICTION

Here, LIU invokes the Court's diversity jurisdiction. Dkt. No. 1 at ¶ 5. A party seeking to invoke federal diversity jurisdiction must demonstrate that the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332. Vida Buena does not contest that the parties are diverse, but disputes that the amount in controversy has been satisfied. Specifically, Vida Buena argues that the amount in controversy in this case is $72,473.31. Dkt. No. 12 at 1. LIU responds that while the damages alleged in the underlying lawsuit is admittedly less than the $75,000 threshold, Ruby "has or will incur attorney's fees which together with its economic damages will exceed" that threshold. Dkt. No. 19 at 4.

While potential attorneys' fees are generally not included in determining the amount in controversy, one exception exists when "a state statute provides for attorney's fees," in which case "such fees are included as part of the amount in controversy." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *see Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F.Supp.3d 1092, 1113 (S.D. Tex. 2020). Because LIU brings a declaratory action seeking to absolve itself of liability with respect to the damages asserted in the state court proceeding, the relevant amount in controversy is based on the state proceeding. There, Ruby asserts, *inter alia*, a breach-of-contract claim against LIU. Dkt. No. 14-1 at ¶¶ 12–13. And under Texas law, "[t]he award of reasonable attorneys' fees is *mandatory* under § 38.001 if the plaintiff prevails in his or her breach of contract claim and recovers damages." *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002) (emphasis added); *see* Tex. Civ. Prac. & Rem. Code § 38.001(8). The attorneys' fees sought in the state proceeding are therefore included as part of the amount in controversy, and upon review of LIU's evidence, the Court finds that those fees are likely bring the amount in controversy comfortably above the $75,000 threshold. *See* Dkt. No. 19-4. The Court therefore holds that LIU has satisfied the amount in controversy for purposes of invoking federal diversity jurisdiction.

**B.     ABSTENTION**

Ruby and Vida Buena both submit that the Court should decline from exercising jurisdiction over this case, pursuant to the *Brillhart* abstention doctrine. *See* Dkt. Nos. 9, 12. The Fifth Circuit provides a three-step inquiry for district courts in determining whether to adjudicate an action for declaratory judgment: (1) whether the action is justiciable, which is typically a question of whether an actual controversy exists between the parties; (2) whether the court has the authority to grant the requested declaratory relief; and (3) whether the court should exercise its discretion to decide the action, or to abstain from doing so and dismiss it. *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The parties do not dispute that the first and second steps of this inquiry are met, and exclusively focus on the third step as to how the Court should exercise its discretion. When determining whether to exercise jurisdiction over a declaratory judgment action, district courts in the Fifth Circuit apply seven non-exclusive factors:

1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

3) whether the plaintiff engaged in forum shopping in bringing the suit;

4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

5) whether the federal court is a convenient forum for the parties and witnesses;

6) whether retaining the lawsuit would serve the purposes of judicial economy; and

7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994). These *Trejo* factors embody, and are analyzed in light of, the overarching principles articulated by the Supreme Court in *Brillhart*

*v. Excess Ins. Co. of Am.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).[4] These principles are: proper allocation of decision-making between state and federal courts, i.e., federalism (factors 1 and 7), fairness (factors 2 through 4), and efficiency (factors 1, 5, and 6). *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390–92 (5th Cir. 2003). The Court considers each principle.

### 1.  Federalism

The Court first considers the proper allocation of decision-making between state and federal courts. In *Brillhart*, the Supreme Court indicated that jurisdiction is strongly disfavored where "another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495. The Supreme Court explained that federal jurisdiction in such circumstances is ordinarily "uneconomical as well as vexatious," as "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.*; *see also Sherwin-Williams*, 343 F.3d at 394 ("[T]he presence or absence of a pending parallel state proceeding is an important factor.").

The present case involves an earlier-filed state action, and upon closer review, each of the parties in this declaratory action are also involved in the state court proceeding. Ruby's operative state court petition, and Vida Buena's operative state court cross-petition, bring suit

---

[4] The Supreme Court in *Brillhart* addressed declaratory judgment actions particularly in the context of pending state proceedings, identifying six non-exclusive factors to consider when evaluating whether the issues in the federal proceeding are better-suited for resolution in the pending state proceeding. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *Brillhart*, 316 U.S. at 495). The *Trejo* analysis applies to declaratory actions generally, whereas the *Brillhart* analysis applies to declaratory actions where there is a pending parallel state proceeding; indeed, whether there is a pending parallel state proceeding is the very first factor in the *Trejo* analysis. *See id.* at 590. The Fifth Circuit has explained that there is no real distinction between the various articulations of the relevant considerations because they all "address[] the same three aspects of the analysis": (1) the proper allocation of decision-making between state and federal courts, (2) fairness, and (3) efficiency. *Sherwin-Williams*, 343 F.3d at 390–91; *see also Berkley Nat'l Ins. Co. v. Orta-Gonzalez*, No. 4:23-CV-00003, 2023 WL 7545233, at *8 (W.D. Tex. Nov. 13, 2023) ("The Fifth Circuit clarified in *Sherwin-Williams* that the *Trejo* test embodies the three overarching principles expressed in the *Brillhart* factors: federalism, fairness, and efficiency), *report and recommendation adopted*, No. 4:23-CV-00003, 2024 WL 166012 (W.D. Tex. Jan. 13, 2024).

against, *inter alia*, Parkcrest and LIU.[5] Dkt. No. 14-1. And LIU filed this declaratory action against Parkcrest, Ruby, and Vida Buena. This suit therefore involves substantially the same parties as the state court proceeding.[6]

As for whether the pending state court proceeding involves similar issues, Ruby and Vida Buena submit that this declaratory action seeks relief "from the *exact same dispute* that was already the basis of" the state court proceeding. Dkt. No. 9 at 2 (emphasis in original); *see also id.* at 5 (stating that the two cases involve "the same dispute by the same parties" and are governed by "the same legal issues, same factual issues, same discovery, same depositions[,] [and] same witnesses"). LIU disagrees with this characterization, arguing that this declaratory action concerns the scope of coverage of the policies LIU issued to Parkcrest whereas the state court action "involves no insurance coverage issues or claims[.]" Dkt. No. 13 at 6. But despite that the legal issues are, on paper, at least not completely identical, a closer review of the two cases belies this notion of dissimilarity. First, as a broad matter, the state court suit confronts the

---

[5] LIU, opposing abstention, argues that the parties here are not the same as in the state court proceeding, where Ruby had initially mistakenly sued LIU's intermediate corporate parent LMI, a separate legal entity. Dkt. No. 24 at 2. According to LIU, because this error existed at the time LIU brought this declaratory action and when Ruby moved to abstain, the Court should not consider the state court proceeding to be parallel since jurisdiction is determined based on the state of things at the time the action is brought. *Id.* at 3–4. The Court rejects this argument. While LIU cites general propositions explaining that jurisdiction is determined at the time of suit, the relevant question here is not whether the Court *has* jurisdiction—it decidedly does—but whether the Court *should exercise* its jurisdiction. *See Wolfe*, 212 F.3d 895. On this point, LIU fails to offer any support for the proposition that mistakenly naming an incorrect party in the state court proceeding is of any import in the abstention analysis when the error has since been corrected and did not otherwise produce any issues, such as notice, statute of limitations, etc. *See* Dkt. No. 1 at 13 (indicating that LIU knew, at the time of filing this action, that Parkcrest's insurers were being sued); Dkt. No. 14 at 4 (same);. Indeed, in *Sherwin-Williams*, the Fifth Circuit considered the "impact" of whether there was a state court action pending "when the district court dismissed th[e] case" – not when the action was filed. 343 F.3d at 392. Therefore, for purposes of exercising jurisdiction, it only matters whether the parties are parallel at the time of the abstention analysis, and it is of no moment that they at one point technically were not so.

[6] To be sure, while all of the parties in this declaratory action are named in the state court suit, the state court suit also names additional entities. *See* Dkt. No. 14-1. However, as explained in *Sherwin-Williams*, the related state proceeding need not involve the exact same parties or issues, as the proper inquiry is to "consider[] the extent of similarity between the pending state court and federal court cases in deciding which court should decide the dispute, rather than rely[] on a *per se* rule." 343 F.3d at 394 n.5.

same underlying matter in controversy here: whether LIU must pay for the invoices owed Ruby. Moreover, LIU, the declaratory plaintiff here, is also a named defendant in the state court action, so it is not the case that "it could only bring the insurance issues before the state courts by affirmatively intervening in the pending liability action or commencing a separate, independent declaratory judgment[.]" *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) (finding that the state proceedings did not justify abstention in part because the declaratory plaintiff was not a party to the state court liability suit). Not only so, but the legal issues at play in both suits are strongly intertwined and overlapping. In the present declaratory action, LIU asks the Court to hold that it has no duty to indemnify Ruby or Vida Buena, in part because LIU was not a part of the Settlement Agreement. *See* Dkt. No. 1 at ¶¶ 28, 31 (seeking a judicial declaration as to LIU's obligations under, *inter alia*, the Settlement Agreement). But resolving this contention requires interpreting the Settlement Agreement and the obligations that it imposes on LIU, which is squarely at issue in the state proceeding. Similarly, the insurance policies issued by LIU to Parkcrest may well be at issue in the state proceedings. Because the Settlement Agreement purportedly obligated "Parkcrest and its insurers" to "*remain* responsible" to unpaid vendors, Dkt. No. 9 at 2 (emphasis added), whether it is Parkcrest versus LIU that is responsible for any judgment against Parkcrest may turn on interpreting the policies.[7] So while not entirely parallel, the issues presented in this case significantly overlap with the state action, presenting a situation where the federal ruling would have a "direct bearing" on the state case, and vice versa. *Agora*, 149 F.3d at 373.

---

[7] The word "remain" is important, as it suggests that the Settlement Agreement did not shift or otherwise alter any obligations between LIU and Parkcrest. If that were held to be the case, the scope-of-coverage issues in this declaratory action would also be at issue in the state proceeding, irrespective of the terms of the Settlement Agreement.

In light of the overwhelming similarities between this declaratory action and the state court action with respect to both parties and issues, the first *Trejo* factor strongly weighs in favor of abstention. And while the seventh *Trejo* factor weighs against abstention because this Court is not being called on to construe a state judicial decree, overall consideration of the proper allocation of decision-making between state and federal courts still weighs strongly in favor of abstention in light of: (1) the specific similarities in the cases at bar, and (2) *Brillhart*'s strong language disapproving jurisdiction in such circumstances. *See* 316 U.S. at 495.

### 2. **Fairness**

The second, third, and fourth *Trejo* factors each implicate fairness, looking to "whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Sherwin-Williams*, 343 F.3d at 397. The first fairness factor is "whether the declaratory plaintiff filed suit in anticipation of a lawsuit by the defendant." *Trejo*, 39 F.3d at 590–91. Ordinarily in a case like this, the answer would be no, because the state court suit had already been underway; however, this case is unique. Recall that Ruby's state court pleadings initially made the mistake of naming LMI rather than LIU. *See* Dkt. No. 9-1. And while Ruby has since rectified that mistake, LIU brought this declaratory action before Ruby made the correction. Thus, it appears to be the case that when LIU received notice that Ruby brought claims against LMI, LIU anticipated being sued and preemptively brought this declaratory action. Given the strong indications that LIU filed suit in anticipation of being properly named in the state court action, the Court finds this factor to favor abstention.

The next fairness factor asks "whether the plaintiff engaged in forum shopping in bringing the suit." *Trejo*, 39 F.3d at 591. The Fifth Circuit has explained that it is not necessarily improper to sue in anticipation of a state suit, and the mere choice of filing a declaratory action in federal court "is not in itself improper anticipatory litigation or otherwise

10 / 14

abusive forum shopping." *Sherwin–Williams*, 343 F.3d at 391 (cleaned up). After all, "[m]ore than one venue may be proper, requiring the plaintiff to select a forum." *Id.* at 391–92. Fairness concerns are implicated where the federal declaratory action involves impermissible "procedural fencing" such as forum manipulation, including where selection of the federal forum would result in a change in the substantive applicable law. *See id.* at 397. But here, LIU's declaratory action was brought in the same district as the state court action, and, invoking diversity jurisdiction, likewise seeks to apply Texas law. *See* Dkt. No. 1. This consideration therefore favors exercising jurisdiction.

Finally, the third fairness factor considers "whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist." *Trejo*, 39 F.3d at 591. Such inequity might exist where a ruling on a particular issue by the federal court could contradict a ruling in the state court case, thereby giving the declaratory plaintiff precedence. *See Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F.App'x. 159, 168 (5th Cir. 2015). In *Ironshore*, the Fifth Circuit found that the equities weighed against jurisdiction because the state and federal actions decidedly involved legally distinct issues, and the plaintiff in the state action was not a party to the federal action and therefore could not be bound by any federal determinations. *Id.* at 167–68. As already discussed, *supra* Sec. III.B.1, the present case involves overlapping issues, and resolution of those issues would therefore create potential inequity. *See*, *e.g.*, *Penn-Am. Ins. Co. v. Haros, L.L.C.*, No. 1:22-CV-00706, 2023 WL 2997863, at *14 (W.D. La. Apr. 3, 2023) (favoring abstention for this very reason); *Nautilus Ins. Co. v. Bolton*, No. 4:11-CV-03558, 2012 WL 2403503, at *4 (S.D. Tex. June 25, 2012) (same); *see also Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 n.7 (5th Cir. 1993) ("Using a declaratory judgment action to race to res judicata . . . is thoroughly inconsistent

with the purposes of the Declaratory Judgment Act and should not be countenanced.).
Accordingly, this factor weighs in favor of abstention.

### 3. Efficiency

In considering principles of efficiency, courts look to the first, fifth, and sixth factors of the *Trejo* test: whether there is a pending state action in which all of the matters in controversy may be fully litigated, whether the federal court is a convenient forum for the parties and witnesses, and whether retaining the lawsuit would serve the purposes of judicial economy. *Sherwin-Williams*, 343 F.3d at 390–92. The Court has already discussed the first efficiency consideration at length, finding that the pending state action strongly favors abstention in light of the considerable probability that the legal rulings in either case would directly bear on the other. *See supra* Sec. III.B.1.

As to whether the federal forum is convenient for the parties and witnesses, the federal and state venues are located roughly 11 miles apart. They therefore appear equally convenient, and the Court finds this factor to be neutral. *See*, *e.g.*, *Smith v. McLean*, No. 4:10-CV-00792, 2011 WL 2792387, at *7 (S.D. Tex. July 14, 2011) (finding, in similar circumstances, that no forum was more convenient than the other); *Canopius Ins. Inc. v. Arbor Experts, LLC*, 965 F.Supp.2d 777, 782–83 (S.D. Miss. 2013) (same).

Finally, consideration of the judicial economy favors abstention in this case because of the possibility that the same legal issues "would be simultaneously litigated by the state and federal courts," which "would not serve judicial economy." *Canopius*, 965 F.Supp.2d at 783; *see supra* Sec. III.B.1. As is the case here, "such litigation risks inconsistent rulings and

unnecessary duplication of judicial resources." *Penn-Am*, 2023 WL 2997863 at *14. This factor thus weighs in favor of abstention.[8]

## IV.   CONCLUSION

The foregoing analysis indicates that the abstention factors, viewed together, heavily weigh against the exercise of federal jurisdiction. In declining to exercise its jurisdiction, the Court affords particular consideration to the first factor and the strong preference against federal jurisdiction where pending state court proceedings may well resolve the very same issues. *See Sherwin-Williams*, 343 F.3d at 394; *Brillhart*, 316 U.S. at 495. Accordingly, the Court hereby **ORDERS**:

Vida Buena's Motion to Dismiss (Dkt. No. 12) is **DENIED** with respect to its contention that this Court lacks subject-matter jurisdiction. That Motion (Dkt. No. 12), as well as Ruby's *Brillhart* Motion to Abstain (Dkt. No. 9), are **GRANTED** with respect to their request that the Court decline to exercise jurisdiction pursuant to the *Brillhart* abstention doctrine. This case is **STAYED** pending resolution of the state court action, after which either party may move to re-open.[9] The Clerk of Court is **DIRECTED** to close this case for statistical purposes. All settings are hereby **VACATED.**

---

[8] In *Ironshore*, the Fifth Circuit observed that where the federal and state courts potentially involved the same legal issues, the judicial economy might still weigh against dismissal where the issues in the federal proceeding are fully briefed and no factual disputes remained. 624 F.App'x at 168. But such is plainly not the case here, where the federal proceeding is still very much in its infancy.

[9] In instances where district courts within the Fifth Circuit have found abstention proper, the courts generally opt for one of two options, without explanation as to its choice—(1) dismissal of the case, or (2) a stay of the case pending resolution of the state court litigation. *Compare Cont'l Ins. Co. v. Gifford-Hill & Co., Inc.*, No. 3:12-CV-00925, 2013 WL 1875930 (N.D. Tex. May 6, 2013) (stay); *Am. Sec. Ins. Co. v. Penwright*, 456 F.Supp.2d 753 (E.D. La. 2006) (stay), *with McLean*, 2011 WL 2792387 (dismissal); *Bolton*, 2012 WL 2403503 (dismissal). In the present case, Ruby requests that the Court "either dismiss or stay this action" (Dkt. No. 9 at 5) and Vida Buena requests dismissal (Dkt. No. 12 at 2). The Supreme Court has explained that *Brillhart* abstention affords "substantial latitude in deciding whether to stay or to dismiss[.]" *Wilton*, 515 U.S. at 286. Because it appears possible that some of the issues presented in this case might remain unresolved following the disposition of the state court action, the Court finds that a stay, rather than outright dismissal, is proper here.

SO ORDERED August 8, 2024, at McAllen, Texas.

                                                            Randy Crane
                                                            Chief United States District Judge